## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CRYPTOCURRENCY SEIZED FROM ACCOUNT ID 21353169 HELD IN THE NAME OF CHANDNI SHARMA AT CRYPTOCURRENCY EXCHANGE BINANCE HOLDINGS LIMITED ,<br><br>CRYPTOCURRENCY SEIZED FROM ACCOUNT ID 79203481 HELD IN THE NAME OF ANUJ SHARMA AT CRYPTOCURRENCY EXCHANGE BINANCE HOLDINGS LIMITED, and<br><br>CRYPTOCURRENCY SEIZED FROM ACCOUNT ID 156571178 HELD IN THE NAME OF KUNAL CHHABRA  DILIP KUMAR CHHABRA AT CRYPTOCURRENCY EXCHANGE BINANCE HOLDINGS LIMITED,<br><br>DEFENDANTS-IN-REM | No. 2:23-cv-    - |

## VERIFIED COMPLAINT FOR FORFEITURE

Plaintiff, United States of America, by and through its attorneys Darcie N. McElwee, United States Attorney for the District of Maine, and Donald E. Clark, Assistant United States Attorney, for its civil forfeiture complaint alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

## NATURE OF THE ACTION

1.     This is an action to forfeit and condemn to the United States of America, cryptocurrency seized from Account ID 21353169 held in the name of Chandni Sharma at Cryptocurrency Exchange Binance Holdings Limited ("Binance") (the "**CHANDNI**

SHARMA BINANCE ACCOUNT"), cryptocurrency seized from Account ID 79203481 held in the name of Anuj Sharma at Binance (the "**ANUJ SHARMA BINANCE ACCOUNT**"), and cryptocurrency seized from Account ID 156571178 held in the name of Kunal Chhabra Dilip Kumar Chhabra at Binance (the "**CHHABRA BINANCE ACCOUNT**"), by the Federal Bureau of Investigation ("FBI"), on about July 15, 2022, (the "defendants-in-rem"), pursuant to 18 U.S.C. § 981(a)(l)(A), for being involved in money laundering, in violation of 18 U.S.C. §§ 1956 and 1957; and pursuant to 18 U.S.C. § 981(a)(l)(C) because they are property which constitutes or is derived from proceeds traceable to wire fraud and wire fraud conspiracy, in violation of 18 U.S.C. §§ 1343 and 1349.

## DEFENDANTS-IN-REM

2.  The defendants-in-rem were seized on July 15, 2022, from Binance, Account ID 21353169, held in the name of Chandni Sharma, Account ID 79203481 held in the Name of Anuj Sharma, and Account ID 156571178, held in the name of Kunal Chhabra Dilip Kumar Chhabra and are presently in the custody of the FBI.  The funds were transmitted by Binance to the FBI in the form of various cryptocurrencies present in the accounts on the date of the seizure.

## JURISDICTION AND VENUE

3.  The Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).  This Court also has jurisdiction over this action under 18 U.S.C. §§ 1956 and 1957 and 18 U.S.C. §§ 1343 and 1349.

4.      This Court has in rem jurisdiction over the defendants-in-rem pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred within the District of Maine and the property was seized in this district.

## ALLEGATIONS OF FACT

6.      On about April 15, 2022, the FBI office located in Portland, Maine became aware of an elder abuse scheme through which a married couple residing in Phippsburg, Maine (together, hereafter "Victim 1") lost over $1 million. Victim 1 provided details of the scheme through a complaint they submitted through the FBI's Internet Crime Complaint Center website ("IC3.gov") as well as interviews. Victim 1 reported that in early February 2022, Victim 1 received a pop-up message appearing to be from Microsoft on one of their personal computers, which indicated there had been a massive breach of their computer systems and banking information. They were provided an 800-series telephone number to reach Microsoft. Upon calling the number, they spoke with an individual who referred to himself as "Adam Smith" and claimed to be a senior security analyst with Microsoft. "Smith" indicated that Victim 1's emails, banking information, and telephones had possibly been compromised. "Smith" appeared aware of Victim 1's association with Fidelity Investments and made reference to a Fidelity Investments customer service phone line. "Smith" connected Victim 1 to another individual known to Victim 1 as "Alen Watson," purportedly a Fraud Protection Specialist at Fidelity Investments. "Watson" communicated with Victim 1 over the telephone number 209-407-2108.

3

7.      "Watson" told Victim 1 that he had prevented a person from withdrawing $100,000 from one of Victim 1's Fidelity accounts. "Watson" accurately described the kind of account Victim 1 held at Fidelity, including the account number. "Watson" told Victim 1 that the person used Victim 1's Social Security Account numbers as identifications. "Watson" told Victim 1 that he notified the Social Security Administration directly to report the attempted fraud, and that the Social Security Administration was requiring Victim 1 to apply for new Social Security numbers.

8.      "Watson" told Victim 1 that they were required to transfer all of their funds to a Social Security Administration approved, secure "storage" location before Victim l's new Social Security numbers could be issued. "Watson" advised Victim 1 that the Social Security Administration required all aspects of this incident to be confidential because it was unclear what individuals and locations were involved in the attempted fraud.

9.      "Watson" advised Victim 1 to leave their computers powered on until further notice. Victim 1 was aware that software known as "Ultra viewer" was installed on both of Victim 1's computers so that "Watson" and "Smith" could monitor Victim 1's computers, purportedly to detect additional fraudulent activity.

10.     "Watson" then helped Victim 1 complete and submit applications for new Social Security cards, exhibiting knowledge and experience on how to complete the forms. "Watson" identified for Victim 1 the supposed approved Social Security Administration "storage" location as Coinbase, Inc., a major cryptocurrency organization. "Watson" told Victim 1 that the Social Security Administration instructed that all of Victim l's funds at Fidelity had to be wired to Coinbase via the Cross River Bank in Teaneck, New Jersey. In order to keep the transfers confidential, "Watson" recommended that Victim 1 explain to their investment advisor, RM Davis, and bank,

Bath Savings, that the withdrawals from Fidelity were made as part of an "exciting real estate investment opportunity" that Victim 1 was pursuing.

11.     "Watson" then informed Victim 1 of a supposed second attempt to defraud Victim 1. In this instance, "Watson" sent two urgent text messages to Victim 1, followed by a phone call, asking if Victim 1 had applied for a $500,000 mortgage from a credit union in Utah. "Watson" then emailed Victim 1 a document appearing to be a loan application made by Victim 1. In fact, Victim 1 had not made the loan application. Because of this supposed second attempt to defraud Victim 1, "Watson" told Victim 1 that the Social Security Administration was requiring Victim 1 to obtain a legitimate bank loan to confirm their identities. Based on "Watson's" advice, Victim 1 then applied for and obtained a home equity line of credit through Camden National Bank in Maine (where they had recently re-financed the mortgage loan). "Watson" then advised Victim 1 that those funds were required to be sent to Coinbase as well, for "safekeeping," as the funds were now part of their financial assets and could be subject to theft. Camden National Bank provided Victim 1 with a certified check for $150,000, which Victim 1 hand carried to Bath Savings. From there, it was wired to Coinbase.

12.     Victim 1 text messaged "Watson" with this update. "Watson" immediately called Victim 1, advising that the Social Security Administration could complete the issuance of the new Social Security numbers in about a week, at which time all funds would be returned to Fidelity Investments and Camden National Bank. "Watson" suggested that if Victim 1 had not heard back from him, Victim 1 should text him in a week. When Victim 1 sent messages to "Watson" on about April 6 and April 8, 2022, "Watson" did not respond. Victim 1 called "Watson" on about April 11, receiving an

automated message that the number was no longer in service. At this point, Victim 1 realized they had been victimized by fraud.

13.     Throughout, "Watson" communicated with Victim 1 using text messages and voice calls over the phone number 209-407-2108, which "Watson" told Victim 1 was an encrypted cell phone.

14.     As a result of the victimization described above, Victim 1 transferred about $1,141,000 to Coinbase, Inc. in the following manner:

15.     On about February 7, 2022, $10,000 was transferred via wire from Victim 1's Bath Savings account to a bank account in the name of Coinbase, Inc., held at Cross River Bank in  Teaneck, New Jersey.

16.     On about February 15, 2022, $800,000 was transferred via wire from Victim 1's Fidelity Investments accounts to a bank account in the name of Coinbase, Inc., held at Cross River Bank in Teaneck New Jersey.

17.     On about February 16, 2022, $81,000 was transferred via wire again from Victim 1's Fidelity Investments accounts to the Cross River Bank account in the name of Coinbase, Inc.

18.     On about February 15, 2022, $100,000 was transferred via wire from Victim 1's Bath Savings Institution bank account to the Cross River Bank account in the name of Coinbase, Inc.

19.     On about March 30, 2022, $150,000 was transferred via wire again from Victim 1's Bath Savings Institution bank account to the Cross River Bank account in the name of Coinbase, Inc.

20.     In early 2022, Victim 1's information was used to set up an account at cryptocurrency exchange Coinbase (the "Victim 1 Coinbase Account"). As described

above, Victim 1 was deceived into sending several wire transfers to Coinbase. In total, these Coinbase deposits amounted to $1,140,920 (net of fees). These funds were subsequently used to purchase Bitcoin that was held in the Victim 1 Coinbase Account.

### Victim 1 Coinbase Deposits

| Timestamp | Amount |
|---|---|
| 2/7/2022 9:17 | $9,990 |
| 2/15/2022 7:59 | $49,990 |
| 2/15/2022 9:57 | $99,990 |
| 2/15/2022 10:04 | $49,990 |
| 2/15/2022 12:30 | $699,990 |
| 2/16/2022 7:50 | $68,990 |
| 2/16/2022 7:50 | $11,990 |
| 3/30/2022 10:36 | $149,990 |
| **Total** | **$1,140,920** |

21.    Victim 1 conveyed to the FBI that they had never conducted any transactions within the Coinbase account. Watson took photos of Victim 1 over Victim 1's computers and knew all of Coinbase's procedures.  Victim 1 conveyed that the first time Victim 1 accessed the Coinbase account was well after their realization they were victims of fraud.

22.    The United States is aware of several other victims who were also swindled by an individual purporting to be named "Alen Watson," and also using the telephone number 209-407-2108, during the same approximate time period as Victim 1. For example, Victim 2, based in Middletown, Connecticut, was convinced by "Watson" in a similar manner as Victim 1 and caused to transfer about $2,591,100 to Coinbase, Inc. and two other cryptocurrency exchange businesses known as FTX and BAM Trading Services, during February and March 2022. Victim 3, based in Salem, Oregon, was convinced by "Watson" in a similar manner as Victim 1 and caused to transfer about $4,308,000 to FTX, in March 2022. Telephone numbers of both Victims 2 and 3 appear

in the call logs provided by TextNow for 209-407-2108. The telephone number for Victim 3 also appears in the message logs provided by TextNow for 209-407-2108.

23.     The United States is aware of another victim based in Essex Junction, Vermont (Victim 4), who was also swindled by an individual purporting to be named "Alen Watson." In this case, however, Victim 4 communicated with "Watson" using the telephone number 209-425-0571. Victim 4 was caused to transfer about $514,000 to Coinbase over several transactions in January 2022, as well as one on about March 9, 2022.

### Fraudulent Transfers of Victim 1's Funds to ANUJ SHARMA'S and CHANDNI SHARMA'S Binance Accounts

24.     Victim 1 was deceived into sending several wire transfers to a cryptocurrency exchange, Coinbase. Because cryptocurrency is based on the blockchain ledger system, which is publicly available to view, software has been developed to trace cryptocurrency transactions. The United States has worked with an FBI Forensic Accountant who has received training and certification with this software. The FBI Forensic Accountant has used this software along with manual tracing on the blockchain ledger system to track the movement of illicit proceeds.

25.     Using this process, the United States was able to identify two cryptocurrency exchange accounts that were used in furtherance of the fraud that received Victim 1 funds. The first account is registered to the cryptocurrency exchange Binance through Account ID 79203481 and contains the **ANUJ SHARMA BINANCE ACCOUNT.** The second account is registered to the cryptocurrency exchange Binance through Account ID 21353169 and contains the **CHANDNI SHARMA BINANCE**

**ACCOUNT.** Both accounts have been identified as receiving Victim 1's funds, as detailed below.

26.     The United States is aware that cyber criminals will often incorporate cryptocurrency into their activities due to its anonymity and complex tracking. Cybercriminals will conduct several transfers of cryptocurrency, and/or convert it to other forms of cryptocurrency to launder illicitly obtained funds, including concealing the unlawful source of such funds. This often includes, as in this case, commingling unlawfully obtained funds with funds from as-yet unknown sources.

27.     Victim l's funds were transferred to several addresses, then further transferred, and ultimately converted to the **ANUJ SHARMA BINANCE ACCOUNT** and the **CHANDNI SHARMA BINANCE ACCOUNT.**

**Fraudulent Transfer of Funds from Victim 1's Coinbase Account**

28.     Between about February 15, 2022 and about March 30, 2022, outgoing transfers of Bitcoin were sent from the Victim 1 Coinbase Account to the following addresses:

**Victim 1 Coinbase Outgoing Bitcoin Transfers**

| TIMESTAMP | AMOUNT | CURRENCY | TO | EQUIV USD | TRANSACTION HASH |
|---|---|---|---|---|---|
| 2/15/2022 6:08 | (0.21911) | BTC | 3HXKDSeRFwChp6AtFgFN12D1h5Z8wHJo8X | ($9,728.36) | 390f4bc1d6ac665b18435cdf923d674b6ad3b28a9bf58c29d62dd78e9b72461c |
| 2/15/2022 10:30 | (4.44129) | BTC | 37kobaTqyXHbQff7J9wtkjT8zSSryVdHpy | ($196,237.15) | 56562c0d90846ac0cd8ef54ef54cf2a7277f491d2195a482398bc59605e1a74e3bcc |
| 2/15/2022 12:41 | (15.53931) | BTC | 37kobaTqyXHbQff7J9wtkjT8zSSryVdHpy | ($685,089.87) | fbfb69ba3d134e97377949c91db2dad6763e320e3cc229000ffaec0e061e8445 |
| 2/16/2022 8:01 | (1.82025) | BTC | bc1q4du8pl5jyvymwkw25lj035j85zaplfzk8mk06h | ($79,397.97) | ee90c57fbb10005f684a57ef2d19dbaf422eca42c9f0d44506e72d763599e6fe |

| 3/30/2022 10:53 | (3.08674) | BTC | bc1qklvfl77xdcn9qej4oh4xtffd2zdx0r515s4z8x | ($147,153.17) | 592252818ae127935217e2cad6b8c38e337d2af51be9830c913260aaadc02440 |
|---|---|---|---|---|---|
| **Total** | **(25.10671)** | | | **($1,117,606.52)** | |

### Fraudulent Transfer of Funds from Victim 1 Coinbase Account to Cryptocurrency Addresses and Ultimately to the ANUJ SHARMA BINANCE ACCOUNT

29.     On about February 15, 2022, Victim l's Coinbase account sent about 0.2191 bitcoin to cryptocurrency address 3HXKDSeRFwChp6AtFgFN12Dlh5Z8wHJo8X (hereafter "3HXKD"). Another address believed to be under the same user's control[1] received about 0.12393 bitcoin from separate sources.

30.     Address 33HXKD sent address 17Ek9UYVVt3kEfzMvduKfxuaxoPBvLhznz about 0.12736 bitcoin ($5,380). Bitcoin was also sent to its change address 3PiSg9PWDCAPvzMshB8Zn7m4G8BiXdouoK (hereafter "3PiSg9"). Ultimately, address 3PiSg9 and the other address believed to be under the same user's control sent about 0.143 bitcoin ($5,572) to Binance address 15DWowUxF1kdW3EMhq4Q7uKRV1rCC7KcWA (hereafter "15DWow").

---

[1] The FBI has access to a proprietary software tool that analyzes financial transactions on the bitcoin "Blockchain" (i.e., the public-facing online ledger of Bitcoin transactions.) The software identifies when more than one bitcoin address belong to the same user. These addresses are determined to be under the user's control. To make this determination, the software utilizes the concepts of cospending and change addresses.

Cospending occurs when two or more Bitcoin addresses are used to send bitcoin in a single transaction. This indicates that a single owner holds the private keys for all those addresses. For example, if addresses A and B are cospent in one transaction, and addresses B and C are co-spent in a second transaction, all addresses A, B, and C will belong to the same owner. In this example, the propriety software identifies that A, B and C addresses are under the same user's control.

The concept of change addresses is also used to determine when more than one bitcoin address belong to the same user. When an address spends bitcoin, it must be spent in its entirety. Sometimes, if the value of the transaction is higher than what the owner wishes to pay. In this case, the wallet generates a new bitcoin address for which the owner also holds the private key and sends the difference back to this address. This is known as change. Change addresses are therefore highly likely held by the same owner as the original bitcoin address. Users of the proprietary software tool can use change address analysis to help determine when addresses are under the same user's control.

31.     The United States identified that the address receiving this bitcoin transfer, 15DWow, was registered to an account at cryptocurrency exchange Binance. Records provided by Binance revealed that it was associated with the name "ANUJ SHARMA," the email address 1982.anuj.sharma@gmail.com, and what appears to be an Indian driver's license with the name "Anuj Sharma" bearing a picture of a male. This is the **ANUJ SHARMA BINANCE ACCOUNT.**

32.     Since receiving this deposit, the **ANUJ SHARMA BINANCE ACCOUNT** has bought and sold various cryptocurrency types. From the date Victim 1's funds were first deposited into the **ANUJ SHARMA BINANCE ACCOUNT** to the date on which the account was frozen, withdrawals from the account were limited to the equivalent of about $330. Thus, substantially all transfers of Victim l's funds into the **ANUJ SHARMA BINANCE ACCOUNT** remain there[2].

33.     The **ANUJ SHARMA BINANCE ACCOUNT** was frozen by Binance on about May 22, 2022 at the request of law enforcement. As the result of a Seizure Warrant issued by this court under case 2:22-mj-108-KFW and served on about July 15, 2022, Binance transferred the majority of contents of the **ANUJ SHARMA BINANCE ACCOUNT** to an Exodus Public Address serving as a transfer wallet under the U.S. Government's control, which is represented by the following approximate cryptocurrency values:

| Cryptocurrency | Value |
| --- | --- |
| ADA | 1,816.70245400 |
| ALGO | 2,095.87696500 |

---

[2] Further analysis has determined that there is another subset of transactions labeled by Binance "OTC Payment." Based on information provided by Binance, "OTC Payment" is used to describe peer to peer transactions payment methods, where users can add multiple payment methods to receive payment (bank account, wallet, etc.).  Since the Victim 1-related deposit, there were various cryptocurrencies bought and sold through this OTC Payment platform. Of note, there were two transactions involving a total of .04 bitcoin to buy another cryptocurrency type, ALGO.

| | |
|---|---|
| BTC | 0.42666421 |
| ENJ | 905.41843000 |
| ETH | 10.00411213 |
| IMX | 1,284.31868000 |
| MANA | 782.81501595 |
| QNT | 16.45351249 |
| SHIB | 113,924,558.70000000 |
| SOL | 54.95742247 |
| VET | 26,213.71935377 |
| XRP | 1,850.57316500 |
| USDT | 7,164.84259100 |
| ZIL | 13,616.25382631 |

### Fraudulent Transfer of Funds from Victim 1
### Coinbase Account to Cryptocurrency Addresses and
### Ultimately to the CHANDNI SHARMA BINANCE ACCOUNT

34. On about February 16, 2022, Victim 1 sent about 1.8202 bitcoin ($79,398) from his Coinbase account to cryptocurrency address bc1q4du8pl5jyvymwkw25lj035j85zaplfzk8mko6h (hereafter "bc1q4du8").

35. Address bc1q4du8 sent about 1.8202 bitcoin ($79,830) to address bc1qf2njwk8q9fpan25j0gwwc4hlkw8qfaxmn3glq8 (hereafter "bc1qf2n"). Address bc1qf2n sent about 2.1011 bitcoin ($90,758) to Binance address 17ioLRkavauoUmHT6GvaFE3QwPbLGJR9V5 (hereafter "17ioLR").

36. The United States identified that the address receiving this bitcoin transfer, 17ioLR, was registered to an account at cryptocurrency exchange Binance. Records provided by Binance revealed that it was associated with the name **"CHANDNI SHARMA,"** the email address kunalchhabra72@gmail.com, and what appears to be an Indian passport with the name "CHANDNI SHARMA" bearing a picture of a female. This is the **CHANDNI SHARMA BINANCE ACCOUNT.**

37.     The **CHANDNI SHARMA BINANCE ACCOUNT** was frozen by

Binance on about May 22, 2022 at the request of law enforcement.  As the result of a

Seizure Warrant issued by this court under case 2:22-mj-109-KFW and served on about

July 15, 2022, Binance transferred the majority of contents of the **CHANDNI**

**SHARMA BINANCE ACCOUNT** to an Exodus Public Address serving as a transfer

wallet under the U.S. Government's control, which is represented by the following

approximate cryptocurrency values:

| Cryptocurrency | Value |
|---|---|
| ADA | 858.80000000 |
| ALGO | 503.99000000 |
| BTC | 0.08860620 |
| BNB | 10.12576545 |
| DOT | 69.75000000 |
| ETH | 0.43810000 |
| LINK | 612.87000000 |
| MATIC | 9,594.48000000 |
| SOL | 177.61000000 |
| USDT | 5,552.94999000 |

**Fraudulent Transfer of Funds from Victim 4**
**Coinbase Account to Cryptocurrency Addresses**
**and Ultimately to the CHHABRA BINANCE ACCOUNT**

38.     As described above, Victim 4 was also deceived by "Alen Watson" into

sending several wire transfers to an account with the cryptocurrency exchange Coinbase.

(the "Victim 4 Coinbase Account.") Records received from Coinbase show that Victim 4

deposited about $513,960 (net of fees) in the Victim 4 Coinbase Account during the

period of January 2022 through March 2022. These funds came from accounts at New

England Federal Credit Union and JP Morgan Chase.

**Victim 4 Coinbase Deposits**

| TIMESTAMP | AMOUNT |
|---|---|
| 1/11/22 10:57 AM | $18,990.00 |
| 1/21/22 1:36 PM | $99,990.00 |
| 1/24/22 2:27 PM | $279,990.00 |
| 3/9/22 10:17 AM | $114,990.00 |
| **Total** | **$513,960.00** |

39.    The funds were subsequently used to purchase bitcoin that was held in the

Victim 4 Coinbase Account. Bitcoin from this account were then transferred to other

cryptocurrency addresses and there are several instances where amounts ended at the

**CHHABRA BINANCE ACCOUNT.**

### Victim 4 Coinbase Outgoing Bitcoin Transfers

| TIMESTAMP | AMOUNT | CURRENCY | TO | EQUIV USD | TRANSACTION HASH |
|---|---|---|---|---|---|
| 1/18/2022 | (0.42412) | BTC | bc1qwqt8mzfhkgd91gdw7g6jvcc8a55qaxetyjf4lx | ($17,620.28) | 5f8ba637cf586a4b503785348579bd90d1a59de35ad12ca6b78a2976fb355248 |
| 1/21/2022 | (2.68417) | BTC | 36hjwFgrmbn6eqGXkaN3f4wDNEZhxXVpD6 | ($98,438.57) | b2ad56c01fb28639c3dbfdcba93c8d9f078fd4cd5248cefba287a0eab795c536 |
| 1/24/2022 | (7.51841) | BTC | bc1q4f4lty6u5zg0zs514n0zh7jq4mgmecnvwct7qr | ($274,056.49) | dca962913d7fc753f43f4ca9389679691132b04dae27b607b2e4e38d6d6ea594 |
| 3/9/2022 | (2.70165) | BTC | 39NsiHTN8x3ytkrfnRGZc6TdyrCXKnfZVr | ($113,329.65) | 9be9f73ca166e765e4ebeeac7e3382390 7d463dad598b0f8d939969e94949edd |
| **Total** | **(13.32835)** | | | **($503,444.99)** | |

40.    On about January 18, 2022, Victim 4's Coinbase account sent about

0.42412 bitcoin to address bc1qwqt8mzfhkgd9lgdw7g6jvcc8a55qaxetyjf4lx (hereafter

"bc1qwq"). Address bc1qwq and another address believed to be under the same user's

control then sent about 0.60054 bitcoin to address

bc1qdgjl53cftkx2rz4wrtsr8h9nmuym8dkz6f7aqd (hereafter "bc1qdgjl"). Address bc1qdgjl

and another address believed to be under the same user's control then sent 5 bitcoin to Binance address 1AfgU8dzhTu5xuHJsYX8AgBVi77j3zmhZG (hereafter "1AfgU8").

41.     The United States identified that the address receiving the above bitcoin transfer, 1AfgU8, was registered to an account at cryptocurrency exchange Binance. Records provided by Binance revealed that it was associated with the name **"KUNAL CHHABRA DILIP KUMAR CHHABRA"**, the email address kunalchhabra72@icloud.com, and what appears to be a United Arab Emirates Resident identity card with the name "KUNAL CHHABRA DILIP KUMAR CHHABRA" bearing a picture of a male. This is the **CHHABRA BINANCE ACCOUNT.** The email used for this account has the same username as the email used for the **CHANDNI SHARMA BINANCE ACCOUNT.** The only difference are the domain names.

42.     Similarly, on about January 21, 2022, Victim 4 sent about 2.68417 bitcoin from her Coinbase account to address 36hjwFgrmbn6eqGXkaN3f4wDNEZhxXVpD6 (hereafter "36hjwF"). Address 36hjwF then sent about 2.65905 bitcoin to address 3KPLr3dgLrAPaYZUdBviCH4ytyBXY7wUgJ (hereafter "3KPLr3"). Address 3KPLr3 next sent about 2.634005 bitcoin to address 33uNqyik6gL3Tog2xzSAZpsLxLrZDV84bR (hereafter "33uNqy"). Address 33uNqy then sent about 2.634002 bitcoin to address bclqd3fxveypcyrspqc6gfuxaks6g6u9gu97sa9x92 (hereafter "bclqd3fx"). Address bclqd3fx and other addresses believed to be under the same user's control then sent 4.10 Bitcoin to Binance address 1AfgU8, the **CHHABRA BINANCE ACCOUNT.**

43.     As a further example, on about January 24, 2022 Victim 4 sent about 7.51841 bitcoin from her Coinbase account to address bclq4f4lty6u5zg0zs514n0zh7jq4mgmecnvwct7qr (hereafter "bclq4f41"). Address bclq4f41 and other addresses believed to be under the same user's control sent about

15

8.6029 bitcoin to address bc1qfnywfwnqe40v8mrdlcvznns8d67vjg77tznryg (hereafter "bc1qfny"). Address bc1qfny then sent about 8 bitcoin to Binance address 1AfgU8, the **CHHABRA BINANCE ACCOUNT.**

44.   The **CHHABRA BINANCE ACCOUNT** was frozen by Binance on about May 22, 2022 at the request of law enforcement. As the result of a Seizure Warrant issued by this court under case 2:22-mj-110-KFW and served on about July 15, 2022, Binance transferred the majority of contents of the **CHHABRA BINANCE ACCOUNT** to an Exodus Public Address serving as a transfer wallet under the U.S. Government's control, which is represented by the following approximate cryptocurrency values:

| Cryptocurrency | Value |
| --- | --- |
| 1INCH | 1,653.12100000 |
| ADA | 7,091.73000000 |
| ANKR | 30,938.20000000 |
| AUDIO | 2,148.23460000 |
| BCH | 1.65594400 |
| BTC | 6.56018583 |
| BTTC | 1,475,478,895.30000000 |
| CHZ | 38,956.40300000 |
| COTI | 13,475.16050000 |
| DENT | 1,132,818.00000000 |
| DNT | 96,711.00000000 |
| DOGE | 4,886.00000000 |
| DOT | 3,490.16500000 |
| EGLD | 4.47900000 |
| ENJ | 1,609.06000000 |
| ENS | 30.50000000 |
| ETH | 14.11590000 |
| FTM | 4,560.00000000 |
| FTT | 476.24000000 |
| GRT | 1,928.00000000 |
| LINK | 492.07590000 |
| LTC | 6.45623000 |

| MANA | 2,994.30000000 |
|------|----------------|
| MATIC | 4,992.35253281 |
| SAND | 4,124.45000000 |
| SOL | 510.00516000 |
| SLP | 56,100.00000000 |
| TRX | 69,592.45606500 |
| VET | 150,888.00000000 |
| XLM | 33,841.10500000 |
| XMR | Unable to verify amount. |
| XRP | 10,164.17363800 |
| XTZ | 343.10000000 |
| YFI | 0.41741174 |
| USDT | 92,653.78283000 |

45.     In summary, Victim 1, was swindled by fraudsters into sending about $1,141,000 of their savings to a Coinbase account in their name, which was then liquidated by fraudsters as described above. There are several instances where portions of their funds were sent through the cryptocurrency exchange into other addresses and then into the **ANUJ SHARMA BINANCE ACCOUNT** or the **CHANDNI SHARMA BINANCE ACCOUNT.**

46.     Further, Victim 4 was scammed by fraudsters into sending about $514,000 of her life savings to her Coinbase account. There are several instances where portions of her funds were sent through the cryptocurrency exchange into other addresses and then into the **CHHABRA BINANCE ACCOUNT.**

47.     The United States believes that Victim 1 and Victim 4 are both victims of the same conspiracy. There are several connections  between the **CHHABRA BINANCE ACCOUNT** and the **CHANDNI SHARMA BINANCE ACCOUNT** that are apparent within the records provided by Binance. As stated above, while having different email service providers, the **CHHABRA BINANCE ACCOUNT** and the

**CHANDNI SHARMA BINANCE ACCOUNT** share the same email username, "kunalchhabra72". Additionally, the **CHHABRA BINANCE ACCOUNT** and the **CHANDNI SHARMA BINANCE ACCOUNT** made withdrawals to six of the same cryptocurrency addresses. Further, there are five IP addresses from where both the **CHHABRA BINANCE ACCOUNT** and the **CHANDNI SHARMA BINANCE ACCOUNT** were accessed. One of these IP addresses was associated with a telecommunications service provider in India, while the other four were associated with service providers in Dubai, United Arab Emirates. Additionally, the **CHANDNI SHARMA BINANCE ACCOUNT** has approved devices that accessed the account named "Kunal's 13 PRO MAX" and "Kunal's 13 PRO MAX (2)".

48.     The **CHHABRA BINANCE ACCOUNT** received multiple deposits from victims both known and unknown. To date, the FBI has identified about 17 deposits into the **CHHABRA BINANCE ACCOUNT** that contained a portion of victim funds. The total of these deposits was 49.86 bitcoin, which was worth about over $2 Million at the time the deposits were made. These 17 deposits were funded in part by seven different victims of the fraud scheme including Victim 4.

49.     The first victim-related deposit occurred on December 2, 2021. Prior to the deposits, on December 1, 2021, the **CHABBRA BINANCE ACCOUNT** had a balance of 0.8774 bitcoin, 84.9351 USDT, as well as other cryptocurrency types.

50.     The **CHHABRA BINANCE ACCOUNT** followed a general pattern of activity. After deposits were made into the account, different cryptocurrency types were bought and sold, further obfuscating the sources of funds. The account often held a balance of several types of cryptocurrencies. Below are two examples of this pattern within the account.

51.     On December 23, 2021, the **CHHABRA BINANCE ACCOUNT** received 3.1

bitcoin, partially funded by victims of the scheme, as follows: [3]

> a.  The Account received 40,161 USDT.  The Account received 3.1 bitcoin
>     containing victim-related funds.  The Account sold 3.1 bitcoin and bought
>     151,173.9180 USDT and paid various transaction fees.  The Account
>     withdrew 250,000 USDT to another address, and withdrew 1,999 USDT to
>     another address.

52.     On January 19, 2022, the **CHHABRA BINANCE ACCOUNT** received 6

bitcoin,

partially funded by victims of the scheme, as follows:

> a.  The Account sold 802.6816 USDT for 4.48 EGLD.  The Account received 6
>     bitcoin containing victim-related funds.  The Account sold 7.2450 bitcoin and
>     bought 301,230.9839 USDT and paid various transaction fees.  The account
>     withdrew 300,000 USDT to another address.

53.     The **CHHABRA BINANCE ACCOUNT** had a balance at the time of seizure as

indicated above.  The timing of deposits and withdrawals is important to note.  The last

withdrawal from the account was on January 21, 2022.  The last two deposits into the account

were on January 23 and January 25, 2022, both of which contained victim-related funds.

54.     From January 23, 2022 through the latest activity on February 3, 2022, the

**CHHABRA BINANCE ACCOUNT** received deposits containing victim-related funds and

bought and sold various cryptocurrency types.  Relevant activity is detailed below[4]:

> a.  As referenced in Paragraph 53 above, the Account received 4.1 bitcoin on
>     January 23, 2022 and 8.0 bitcoin on January 25, 2022, both containing victim-
>     related funds.  The Account sold 7.175 bitcoin and bought 265,163.2679
>     USDT.  The Account sold 4,999.64838 USDT and bought 0.13538 bitcoin.
>     The Account sold 168,373.5836 USDT and bought AGLD, BNB, DOT, FTT,
>     LUNA, SAND, SOL, and YFI cryptocurrencies.  The Account paid various
>     transaction fees.

---

[3] All values are approximate.
[4] During the period, the Account also received a SOLO airdrop and swapped BTT to BTTC.

55.     Based on this pattern, while the **CHHABRA BINANCE ACCOUNT** had many different cryptocurrency types within it at the time of seizure, the balance contains victim funds that are commingled.

## CLAIM FOR FORFEITURE

56.     The allegations contained in paragraphs 1-55 of this Verified Complaint are incorporated herein.

57.     Pursuant to 18 U.S.C. § 981(a)(l)(A), the defendants-in-rem are subject to civil forfeiture because they are property involved in money laundering and money laundering conspiracy in violation of 18 U.S.C. §§ 1956 and 1957 and also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(l)(C) because they are proceeds of wire fraud and wire fraud conspiracy in violation of 18 U.S.C. §§ 1343 and 1349.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays:

(a)     that a warrant and summons for arrest of the defendants-in-rem, in the form submitted with this Verified Complaint, issue to the United States Marshal for the District of Maine, commanding him to (i) arrest the defendants-in-rem, and (ii) give notice to all interested parties to appear and show cause why forfeiture should not be decreed;

(b)     that judgment of forfeiture be decreed against the defendants-in-rem;

(c)     that thereafter, the defendants-in-rem be disposed of according to law; and

(d)     that this court grant the United States its costs and whatever other relief to which it may be entitled.

Dated at Portland, Maine this 13th day of January, 2023.

Respectfully submitted,

DARCIE N. MCELWEE
United States Attorney

/s/  Donald E. Clark
Donald E. Clark
Assistant U.S. Attorney
100 Middle Street
East Tower, 6th Floor
Portland, Maine 04101
(207) 780-3257
donald.clark@usdoj.gov

VERIFICATION

Kevin McCusker, being duly sworn, deposes and says that I am a Special Agent with the Federal Bureau of Investigation and as such have responsibility for the within action, that I have read the foregoing complaint and know the contents thereof, and that the same is true to the best of my knowledge, information and belief.

The sources of my information and the grounds of my belief are official records and files of the United States and information obtained by me during an investigation of alleged violations of Title 18, United States Code.

     /s/ Kevin McCusker    
Kevin McCusker
Special Agent
Federal Bureau of Investigation

STATE OF MAINE
Cumberland, ss.

Subscribed and sworn to before me this 6th day of January, 2022.

     /s/ Laurie F. Janson
Notary Public
My commission expires:  09/05/2023